We have one argument before the court this afternoon. This argument had been previously scheduled, but upon examination, the court determined that no final judgment had been entered, which would give rise to our jurisdiction. I understand that that issue has been corrected and that Judge Guilford has now issued a Rule 54B certification that would allow this appeal to go forward. Mr. Huntsman, I know that you requested to have five minutes for opening and ten minutes for rebuttal. I don't allow that. I require at most a six-minute rebuttal because I don't want sandbagging. The whole point here is for the appellant to lay out their argument so that there is something to respond to. So I will give you nine minutes for opening and six minutes for rebuttal. I see, gentlemen, that you have asked for five minutes apiece. That's fine, but just understand that means I don't want you all to say the same thing. We don't need to hear the same thing three times. So if you're dividing up the argument and you're dividing it up substantively, then that's fine. Yes, we are prepared to go forward? Yes, Your Honor. Okay. May it please the Court. The Seventh Amendment provides civil litigants the right of a trial of a jury of six or twelve to resolve civil disputes, generally speaking. Patent law provides that inventions and patents generally are analyzed from the perspective of one skilled in the art. Here, Mr. Shepley's case was terminated by one judge without a jury and without any evidence. So, largely because he believed he makes his case, Mr. Shepley would have to prove that software is hardware. But this is not a fair assessment of the proof required by Mr. Shepley. Mr. Shepley need only show that the claim to invention could read on software or a hardware implementation. Let me understand. You did not assert the method claims against these defendants in this case. Is that correct? That's correct. All right. So you've only asserted the apparatus claims? That's correct. All right. And is it your argument that software constitutes the means, the processor means that you are identifying in your apparatus claim? That's correct. Well, we're saying that the software provides the structure of the means element of the asserted claim. Okay. But these defendants, as I understand it, are simply designers of the software. Is that right? That's correct. All right. So if we're talking about an apparatus claim, how could these defendants practice each and every element of the claim? It's our position that simply because an invention is implemented in software, that does not exclude it from being an apparatus claim. We think that the Patent Office, we can show that the Patent Office has issued claims where at least part, if not all, of the claim to inventions, the elements of the structure are implemented in software. It's our position that the distinction between hardware and software is not necessarily dispositive. That a lot of things that used to be implemented in hardware are now implemented in software. All right. Even if your argument that somehow software can be relegated to a hard surface and it shouldn't be viewed as something just out there in the ether, we are talking about particular claims with particular elements and particular limitations. How do these defendants practice each and every one of the elements of the claim? Well, they create a structure that contains every element of the structure that they make and sell, a structure that has every element of the asserted claim. So is software a computer? No. How then can a claim that recites software infringe a claim that recites a computer? Well, the claim doesn't cite a computer. It cites processing means. In fact, it actually, it's going to discuss, the claim term is processing means, the claim term at issue was processor means under the control of a pre-stored computer program. So a computer isn't explicitly claimed and it's our contention that that means can be implemented in software. It makes just as much sense to implement that in software as it does hardware and that the patent law doesn't make a distinction between what technology is used to implement structure and that we think it would be grave error for the court to hold that software can never satisfy an apparatus claim or part of an apparatus claim. Well, where does the software, where is there a processor means under the control of a pre-sorted computer program for correlating the personal data with the pre-sorted nutritional data? Okay. The processor means is largely the operating system of the computer. If you're on an Apple system or an Android system, there's the Android operating system that controls these apps, that it functions as the overall processing means and within the confines of that operating system, you have these apps that do particular things. And I can kind of give you an example just from the popular culture. We talk about Apple iPhones and usually when you think of an Apple phone, you think of a physical phone. We also talk largely about Android phones, the big competitor Apple. But Android is a reference to the operating system. When you're talking about an Android phone, it's not plastic, it's not buttons, it's not screens. So you've got a phone that has a computer module in it and that has software that operates on that computer module. Even if you could argue that that constitutes the apparatus that you're claiming, how do the designers of the software practice all of those elements? It might be their software that's being purchased for purposes of then practicing those claims, but they're not practicing each and every one of those claims. Well, it's our contention that the app itself is an apparatus and that apparatus has each of the claim elements of the assertive claim. That software, even though it seems intangible, it isn't really. It's as much as an apparatus as a hardware device that is hardwired to do that. So we're arguing that the computer hardware is largely something you have to have in order for the thing to turn on, but the actual apparatus itself is in fact the app. Let's take a different, or maybe it's the same issue, but a different approach. I'm And there it reads, the system includes processor means under the control of pre-stored computer program. The processor, which is conventional, may comprise, and then goes on and talks about an Intel 8086, 8286, and Motorola 600. Those are computer units. I mean, those are actual computers, hardware, right? Okay. Yeah, if you read the specification, the word processor is used by itself approximately six times. And in those cases, when it's used by itself, it was referring to particular embodiments that have particular chips. The first term you quoted- Here, just looking at this portion of the specification, I mean, it would inform me what the term processor means. And we're not looking, we're talking now about what the processor is. You're saying it's software. Correct. And if I want to look at this and see if you're correct or if I agree with you, I look at it and the specification is informing me of something else. It's actually identifying hardware computers by models. Well, the phrase processor means under the control of a pre-stored program was intentionally chosen to be broader than just hardware. Our contention is the hardware that's disclosed in the specification is an embodiment. In fact, it was the preferred embodiment back in 1996. But in a means plus function claim, because you recite processor means, so we presume it's a means plus function claim, aren't you limited to the structures disclosed? Well, our position there, if you look at the particular claimant issue, every element in it is couched in, has means language. Our contention is that the rebuttable presumption and that that particular claim element has the structure of the claim that's actually within the claim. And so we think that falls outside of the 112 section 6. We would propose that this is a case where the presumption could be rebutted. You didn't assert any joint infringement allegations, did you? That's correct. You appeal from the dismissal, and yet you separately complain about the denial of the motion to amend as an issue from which you are actually appealing. We're not applying directly. It was denied under Rule 12e6 because the court ruled that it was futile. So our position is that it's somewhat of a tangential issue here because Well, the motion to amend was denied under Rule 13 because it was futile. Because it was deemed futile. Right. But we're saying that it wasn't futile. There was some argument below that one of the claims included words that were interpreted to be alleging joint infringement. An argument was we didn't put those words into the complaint to assert joint infringement. It was just to describe the situation. And so my argument was that if those words somehow are dragging us into a theory of joint infringement, we'd be happy to amend and strike them because we thought that argument was Okay, so you disclaim any theory of joint infringement. Correct. Okay. You're into your rebuttal. You want to say the rest of it? No, I'll. Thank you. Mr. Hayden, is that correct? No, Your Honor. Mr. Ross? Oh, we're going. Are we in opposite directions here? Yes, Your Honor. I'm sorry about that. That's okay. May it please the Court, my name is Terrence Ross and I represent the appellee, Weight Watchers International, Inc. The substantive positions of the appellees are substantially similar. And so we, as Judge O'Malley suggested, have coordinated the argument and we're going to only argue separate issues, each one of us, and we will be speaking on behalf of all the appellees with respect to each of those issues. And we'll use the phrase software providers instead of the individual name. But we're speaking on behalf of all of them. And I'll start first and I'll address, Your Honor, why we don't make or sell the apparatus that's claimed by Claim 1. Then Mr. Shrum will get up and talk about the language of the patent, I think going to the point Judge Rennie was trying to make. And then finally, Mr. Padden will get up and talk about why we don't use the apparatus claimed under Claim 1. So let me start and go directly to the questions I think that both Judge O'Malley and Judge Rennie were getting at with respect to this question. And it's found that 8020, that's the patent, and it's Claim 1, which is the only asserted claim, and specifically 1C, the processor means under the control of a pre-stored computer program. Now, let me point out that the processor means that you've been asking questions about is under the control of a pre-stored computer program. In other words, it's under control of software. That means that the processor means cannot be software or else it wouldn't be written like this. What we do is make software. That's the pre-stored computer program. Can software be controlled by other software? An operating system can instruct a piece of software how to operate. So that is a possibility that is not what a processor means could possibly mean because, as Judge O'Malley pointed out, this is means plus function language, and therefore they're stuck with the structure that they've identified in the specifications, which are Intel and Motorola microprocessors. There wasn't a claim construction that happened below that. No, it's not required in Rule 12b-6. You're right, Your Honor. It's supposed to be given the broadest reasonable construction, and we would say that it's not reasonable to construe an apparatus or hardware as software. It's simply not reasonable any more than it would be to say the sky outside is the limit. No, under 12b-6, you don't give it broadest reasonable construction. You give it the construction that the plaintiff proposes. Well, actually, this Court has said in the R&L carriers case, which we cite in our brief, footnote 13, it actually says what I just said, that there is no claim construction to be done if it's given the broadest reasonable construction. Well, but in that case, because it was a broad construction that the plaintiff was asserting. That's right, and we believe that this is the broadest... And here, this plaintiff is asserting that it's not a means plus function claim. I mean, regardless of whether that is a viable assertion, that's what he just said. No, I don't believe that's true. You can ask him when he gets back up on rebuttal, but below, he certainly agreed and has repeated references that this is a process for me. But let's look at the language of the First Amendment complaint, the operative complaint, because I don't even know that you need to get to these questions. Under the First Amendment complaint, they describe this patent in the following terms, and this is at paragraph 15. Quote, the 115 patent teaches and claims technology directed toward using handheld computer devices. Handheld computer devices. The software providers don't make handheld computer devices. And just so that you're clear on this, Judge Chen, if you look at paragraph 69, which goes to Weight Watchers, but the same paragraphs there with respect to the other software providers, they say, quote, WW apps, when deployed on an Apple iPhone or tablet, each is an apparatus that infringes at least claim one of the 115 patents. In other words, only after being deployed on the iPhones, you have an apparatus. By itself, the app is not an apparatus. And therefore, it could not possibly, under any assertion, simply not plausible to use the words of Iqbal and Twombly, it's not plausible to say that we could be infringing this particular apparatus patent. Does the software that's at issue, does it practice the method claim of claim 11 and its dependent claim? No, we don't believe so, Your Honor. That wasn't presented. It is clear that they have argued to the district court that represented they're only arguing claim one infringes and that they're only arguing a direct theory of infringement. But even if they had argued 11, we would say that we still do not practice that because we do not control the end user, which is the critical added piece, and we do not control Apple, which is the device manufacturer. And therefore, we couldn't even infringe under the method claims if they had been asserted. My time is up, Your Honor. I'd like to ask a specific question. So in the heading of the pleadings, the name Weight Watchers is kind of different. You've got WeightWatchers.com and Weight Watchers, Inc., correct? Yes, Your Honor, that's correct. So would an affirmance in this case resolve all the claims against WeightWatchers.com? I believe it would, Your Honor, because WeightWatchers.com is actually within Weight Watchers International, Inc. But it's a different entity, isn't it? It's a website. It's not— It's an Inc. It's WeightWatchers.com, Inc., isn't it? We didn't write the caption, but you're correct. That is what the caption says. It also says non-party. My understanding, and I should probably check this if you'd like me to, Your Honor, is that that is a website, WeightWatchers.com, through which Weight Watchers International, Inc. does business. But I'd be happy to check that if that's an issue in your mind. It is an issue, but I don't need you to check it. Okay. It might actually, if you went to that website, it might actually say, if you look at the bottom where it has terms and conditions, it will often identify the corporate entity, and it might say there. If that's just a suggestion, I don't know, though, Your Honor. I'm sorry that I can't answer that. Okay. Mr. Strunk? Thank you, Your Honors. May it please the Court, Jay Jackson Strunk, on behalf of MyNetDiary, Inc. I have been asked, just as Mr. Ross indicated, I'm going to briefly address the means plus function. As this Court, I don't need to recite the background to what the means plus function is. In a nutshell, though, of course, it used to be language like this, language and patents like this, that are construed as means plus function language were illegal. 1952, Congress amended the code and allowed certain broad, what seemingly broadly means plus function language would be acceptable in a patent. However, there was a caveat to that, and that was that the language itself had to describe, within the specifications, a sufficient structure. Yeah, but we don't actually have a claim construction here, so we don't really know what the trial court found to be the structure that corresponds to the identified function. The question is that I believe that we do, although it didn't frame it in just the way that Your Honor did. Does this really matter with respect to the issues regarding the dismissal of the component? I was really mainly responding to an argument that I thought had been raised below, and also an argument that we had brought up in the briefs here. It really ends any need, once you look at the structure that is described in the specification of the patent, even to get to the next step. We don't need to get to a claims construction. We don't need to get to a marksman hearing. All of these issues are resolved fully by simply looking at the face of the patent. Nowhere in this patent does it describe what software is needed. It simply describes it in this overly broad language, which would theoretically subsume anything that could bespeak what the function of the means plus function language is. If you're arguing a means plus function theory, construction, then perhaps the complaint should have been dismissed, and it should have gone on to claim construction. I agree with the lower court. In fact, we raised this issue below, and I believe the lower court was absolutely correct. When it viewed this in light of software versus hardware, what the patent really is a black box. Data goes in, data is outputted to an end user. What that black box is and how it works is not described in the patent. That's what we did. That's what we do as software developers and software providers. We write code. We write algorithms. That's not listed anywhere in here. But that's the whole job of the court in doing a proceeding of a trial is to determine the strength of the patent, and that's what you're arguing. But this case never even got there, never even got off the ground floor. I don't think we need to get there. Part of my problem is you're saying look at the face of the patent. You can see that it's a means of function claim, and you can tell what the function is and what the structure is, but we shortcutted all that. That wasn't done by the trial court. I don't think it was necessary under this court's precedent in the case law, the case like Belmont, the Trimark case, the WMS gaming case. These cases are clear that if there's no structure that's described that does what the alleged infringer does, you could dismiss it even at the 12B6 stage. Well, no, those cases weren't 12B6 cases. Those were indefiniteness cases. Well, that's right. And since we have those rulings that describe clearly how the court is to look at these, there's no need to get into whether there's no plausible basis, there's no plausible argument, rather, that the appellate can claim. It's not whether there's a plausible argument. It's whether there's plausible facts pled. Agreed, yes. And that's the issue. And you want us to kind of make a merits decision here. That's your section of this argument here. You're arguing the merits of the case, and I myself am not going to go there. You're going to have to argue that. I understand. Okay. No, I understand. Thank you. I didn't really want to, like I said, I was going to keep mine brief. I do appreciate your questions and feedback. We believe that the lower court's dismissal was correct. How do you write code? I mean, don't you write code on a computer using processor means? It's different for different types of code, but that's one way to do it. That particular computer, when we're writing code onto a computer of some kind, that does not become an infringing device or an apparatus, even if it mirrored exactly what was in the patent. It's not until we get to the other steps about the making, the using, the selling. It has to include all of these elements because this complaint, this First Amendment complaint, which is the operative complaint, is devoid of these assertions, and there's no way that he can get there based on not only this complaint. I don't think any complaint that he could file is going to get him there. So I know I'm out of time, so I apologize, but I did want to leave some time for Mr. Haddon to speak. Okay. Mr. Haddon? May I please record Dave Haddon from MyFitnessPal? Let me start with your last question, Judge O'Malley. Certainly you write software on a computer, but we have to remember what is at issue here, which is an application that you download, as you said, over the ether. So for Mr. Huntsman's claim to be plausible, the processing means under the control of a pre-stored computer program all have to be something that is floating over the ether to the device, and that's not plausible. But it doesn't operate until it's on a device that has a computer module. Right, and once it's on a device, it's no longer our direct infringement. All we do is provide the software. We don't provide the device. We don't download the software onto the device. That's why this case is completely controlled by this court's decision in Centillion, which had exactly the same issue. It was Quest that provided some back-end services. It also provided some client software that ran on a PC, and the claim in that case required personal computer processing means under controlled software to be something, very analogous to the processor means element we've been talking about. And the court held there that, one, Quest didn't make or use that system because Quest did not put the software on the user's PC. The user did. Exactly the same situation here. Under our new Akabane decision, couldn't you have a joint infringement issue? Potentially, but they have just disclaimed joint infringement. Not only did they say we're not accusing you of joint infringement, we want to strike the in concert language from our complaint, and they told the district court and this court in their brief that we are alleging only direct infringement and solely that MyFitnessPal, for example, performs all elements. So if there was a theoretical joint infringement claim, they haven't made it, and they, in fact, disclaimed it. So we're left with the outcome in Centillion, which is downloading software by a consumer is not direct infringement by the software provider. The alternative argument that they make that I was allocated to address was that somehow by providing back-end services, data in response to the app, my client is directly infringing. Their argument there was that somehow 271A, for use of an apparatus claim, does not require using all elements. But again, the court addressed that very issue in Centillion, said yes, it does require using all elements, and again found that Quest did not infringe by merely providing back-end services because they were not operating the user's PC, which was a required element, just like it's a required element here. So every issue that Mr. Huntsman has raised was addressed in a very analogous situation in Centillion. We relied on that case in the district court. We cited it throughout our brief here. Remarkably, Mr. Huntsman did not acknowledge it or even reference it in any of his appeal briefs. So these arguments are, in my opinion, frivolous. Thank you. Thank you. All right, you have a little over five minutes left for rebuttal. All right. In the time remaining, I would like to discuss further the use argument just referenced. The statutory language of Section 271A of the Patent Statute expressly provides that whosoever without authority uses a patent invention during the term of the patent, therefore infringes the patent. It is noteworthy that the statutory language does not provide any safe harbor for so-called limited use. We're here to expressly, specifically claim it. I'm not sure what you mean by that, limited use. I mean, it's clear that we have said repeatedly that every step of a claim must be practiced, and you need to have direct infringement, which means every element of a claim has to be practiced, and it has to be practiced either by one individual or by someone or by a group that can be jointly liable. You've not alleged joint infringement. So how do you have one person here practicing each and every element of this claim? We believe that the Court has incorrectly completed method claim infringement under 271B with infringement by use of a patent under 271A. Which court, the district court or this court? This court in St. Helens. Our argument is we believe that case, to the extent it holds that every element of a claim has to be exercised on a use claim, we believe that's error, that the Supreme Court has held the beneficial use standard as the correct standard, and under the Supreme Court precedent, beneficial use does not require every element of an apparatus be used. That's different than asserting every element of a method claim be exercised. Well, clearly this panel could not overrule St. Helens. Well, I respectfully argue that the Supreme Court case law is controlling here, that the beneficial standard is controlling to this panel and to this court. All right, what Supreme Court cases are you relying on? Primarily Roberts v. Ryer, which is an old case that this court has relied on in the past. Roberts v. Ryer is 91 U.S. 150, where the court held the inventor of a patented invention is entitled to the benefits of all the uses which it can be put, no matter whether you concede the idea of the use or not. And this court said in the Catalina Marketing International Decision 289 F3D 801, a patent grants the right to exclude others from using the claimed apparatus or composition for any use of that apparatus or composition, whether or not the patentee envisions such use. That case takes us back to the apparatus question. It does. So our argument is that once you've established that… that you're arguing, how are these defendants practicing a processor means, the Intel computer? First of all, let me just state that we do have argued alternate theories in the case below, theories of both when the app is running on a phone and the app's running by themselves. In this use case, what happens is it's already been loaded on a phone, and it's already – so there isn't really the issue of the hardware versus software, because by the time the use comes up, it's a running, functional thing. They provide two steps of the apparatus, and we're claiming that they are using the claimed invention, that once the invention – under 271A, once all the elements are there, you have a patented invention. That once you have an invention, you're limited – any use then is – When you say all the elements are there, I mean, yes, any use, but it has to be one person or joint infringers. So any use doesn't mean one person uses or practices this element, the other person practices this element, the third person practices this element. That's not what those cases stand for. Well, I think, with all due respect, I guess that's where I disagree. I think that the patentee is entitled to require a license for any use of his patented device as long as he can show that it's beneficial use. Really, that's the Supreme Court standard. Just curious, why have you chosen not to pursue joint infringement theory or indirect infringement theory or direct infringement of any of your method patent claims? Because we believe that it's better suited to direct infringement. I mean, we may have been wrong, but we certainly sincerely believe that these software apps are apparatuses that are capable of infringing, and that's just the route we took as a matter of, I guess, litigation tactics. Okay. Anything else? All right. Case is submitted. Court is adjourned. All rise. I, of course, object to the marquee of the chair.